## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JENNIFER GUILLORY

VERSUS

CARRINGTON MORTGAGE
SERVICES, LLC

CIVIL ACTION

NO. 22-192-JWD-SDJ

### RULING AND ORDER

This matter comes before the Court on two motions: (1) the *Motion to for [sic] Summary Judgment* (Doc. 39) ("*Def. MSJ*") filed by Defendant, Carrington Mortgage Services, LLC, ("Carrington" or "Defendant"), and (2) *Plaintiff's Motion for Partial Summary Judgment* (Doc. 40) ("*Pl. MPSJ*") filed by Jennifer Guillory ("Guillory" or "Plaintiff"). Both motions are opposed, (Docs. 42, 45), and each party filed a reply, (Docs. 46, 48). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Pl. MPSJ* is denied, and *Def. MSJ* is granted in part and denied in part. More specifically, Plaintiff's claims for breach of an implied contract, for breach of fiduciary duty, and for unjust enrichment will be dismissed. But, Plaintiff's other claims (for breach of contract and for conversion) will survive to trial.

### I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Guillory owned certain property in Lake Charles, Louisiana (the "Property"). (*See* Def.'s *Statement of Undisputed Material Facts* ("*DSUMF*") ¶ 1, Doc. 39-2; Pl.'s *Resp. to [DSUMF]*

("*PRSUMF*") ¶ 1, Doc. 42-1; Russell Decl. ¶ 6, Doc. 39-3.)[1] The Property was damaged by Hurricane Laura. (*DSUMF* ¶ 9, Doc. 39-2.)

Before that, Guillory had executed a Promissory Note secured by a Mortgage on the Property. (*DSUMF* ¶¶ 1–3, Doc. 39-2.) Carrington eventually became the Holder of the Note. (*DSUMF* ¶¶ 4–5, Doc. 39-2; Russell Decl. ¶ 5, Doc. 39-3.)

Under the Mortgage, any insurance proceeds had to be applied to the restoration or repair of the Property, if restoration was economically feasible. (*DSUMF* ¶ 6, Doc. 39-2.) Further, the Mortgage provided the following, which is at the heart of this dispute:

> During such repair and restoration period, [Carrington] shall have the right to hold such insurance proceeds until [Carrington] has had an opportunity to inspect such Property to ensure the work has been completed to [Carrington's] satisfaction, *provided that such inspection shall be undertaken promptly.* Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.

(*Id.* (emphasis added).)

The central issue in this case is whether Carrington undertook the inspections "promptly." Plaintiff maintains that it did not. Specifically, for reasons discussed in more detail below, Plaintiff contends that Carrington failed to "promptly" conduct the inspections and distribute the insurance proceeds by waiting, *inter alia*, (a) for most inspections, between two and four weeks between when Plaintiff requested the inspection and when Carrington scheduled the inspection; (b) for the final inspection, between 65 and 94 days; and (c) nearly two years from the hurricane to make the final payment.

---

[1] When the *DSUMF* is cited alone, then that fact has either been admitted in the *PRSUMF* or been qualified or denied in such a way as to have it be deemed admitted as not properly controverted. *See* M.D. La. Civ. R. 56(c), (f).

As a result, Plaintiff brings claims for (1) breach of an express and implied contract, (2) breach of fiduciary duty, (3) conversion, and (4) unjust enrichment. (Doc. 15 at 6–10.) *Def. MSJ* seeks dismissal of each of these claims. (Doc. 39.)

*Pl. MPSJ*, on the other hand, deals with a discrete part of Plaintiff's breach of contract claim. (*See* Doc. 40.) Specifically, Guillory received a Claims Procedures Packet, which said:

> **How are insurance funds released?** . . .
>
> Claims greater than $40,000:
>
> - Upon receipt of required documents (refer to Loss Draft Checklist), we will issue an initial disbursement payable to you and your contractor equal to the greater of $40,000, 33% of the insurance loss proceeds, or the amount by which the claim funds exceed the payoff amount of your loan.
>
> - Subsequent disbursements will be issued based upon the progress of repair work as determined by a property inspection.

(Doc. 40-5 at 3.) As will be more fully discussed below, Plaintiff maintains that Defendant breached its express and implied contractual duties by receiving the required documents but not making the initial disbursement of the greater of $40,000.00 or 33% of the insurance loss proceeds. (Doc. 40 at 1.)

## II.    SUMMARY JUDGMENT STANDARDS

### A.    Rule 56 Standard Generally

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' "

*Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue* for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted).

Additionally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1992)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (citing, *inter alia, Ragas*, 136 F.3d at 458). *See also Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (it is not necessary "that the entire record in the case . . . be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up). As a general rule:

> In resolving the motion, the court may not undertake to evaluate the
> credibility of the witnesses, weigh the evidence, or resolve factual
> disputes; so long as the evidence in the record is such that a
> reasonable jury drawing all inferences in favor of the nonmoving
> party could arrive at a verdict in that party's favor, the court must
> deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

But, this matter is proceeding to a bench trial, so the Court has more flexibility and discretion in deciding these motions. "Ordinarily, '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions, not those of a judge.' " *Fleming v. Bayou Steel BD Holdings II L.L.C.*, 83 F.4th 278, 293 (5th Cir. 2023) (first quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); and then citing *Guzman v. Allstate Assurance Co.*, 18 F.4th 157 (5th Cir. 2021) (At summary judgment, the court usually may not invade the province of the jury by "evaluat[ing] the credibility of witnesses, weigh[ing] the evidence, or resolv[ing] factual disputes.") (citations omitted))). "But in a bench trial, the judge acts as 'trier of fact' in place of the jury. *Id.* (quoting *In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991)). "In view of that, 'the district court has somewhat greater discretion to consider what weight it will accord the evidence' when considering summary judgment." *Id.* (quoting *Placid Oil*, 932 F.2d at 397). Granted, "[a]s always, a district court must be aware that assessments of credibility come into sharper focus once live witnesses are heard[.]" *Placid Oil*, 932 F.2d at 398. But, "even at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result.' " *Fleming*, 83 F.4th at 293–94 (quoting *Placid Oil*, 932 F.2d at 398). "And 'the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on

inferences to be drawn from what has been incontrovertibly proved.' " *Id.* at 294 (quoting *Placid Oil*, 932 F.2d at 397 (emphasis omitted).

Also important here, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure [(that is, beyond doubt)] *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *peradventure*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/peradventure (last visited Feb. 14, 2024). *See also Universal Sav. Ass'n v. McConnell*, 14 F.3d 52 (5th Cir. 1993) (unreported) ("Where the summary judgment movant bears the burden of proof at trial, the summary judgment evidence must affirmatively establish the movant's entitlement to prevail as a matter of law."). That is,

> In contrast, if the movant bears the burden of proof on a claim at trial, then its burden of production is greater. It must lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant prevailing. If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.

10A Mary Kay Kane, *Federal Practice and Procedure (Wright & Miller)* § 2727.1 (4th ed. 2022). *See also Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 334–35 (M.D. La. 2022) (deGravelles, J.) (same) (quoting Kane, § 2727.1, *supra*).

Additionally, "cross-motions [for summary judgment] must be considered separately and should not be interpreted necessarily to mean that judgment should be entered on one of them[.]" 10A Mary Kay Kane, *Federal Practice and Procedure (Wright & Miller)* § 2720 (4th ed. 2022). This is because "each party, as a movant for summary judgment, bears the burden of establishing

that no genuine dispute of material fact exists and that the movant is entitled to a judgment as a

matter of law." *Id.*

> The fact that one party fails to satisfy that burden on his own Rule
> 56 motion does not automatically indicate that the opposing party
> has satisfied its burden and should be granted summary judgment on
> the other motion. The court must rule on each party's motion on an
> individual and separate basis, determining, for each side, whether a
> judgment may be entered in accordance with the Rule 56 standard.
> Both motions must be denied if the court finds that there is a genuine
> dispute of material fact. But if there is no genuine dispute and one
> or the other party is entitled to prevail as a matter of law, the court
> will render judgment.

*Id. See also Imani*, 614 F. Supp. 3d at 335 (same) (quoting Kane, § 2720, *supra*)).

### B. Evidentiary Standards for Summary Judgment Motions

Plaintiff objects on several occasions that *DSUMF* is deficient because it fails to provide a

pinpoint cite in violation of this Court's Local Rule 56. (Doc. 42 at 2–3.) Defendant, on the other

hand, objects to many of Plaintiff's exhibits on the grounds that they are not authenticated and are

otherwise hearsay. (Doc. 46 at 1–2.) Consequently, before turning to the merits of these motions,

the Court will address these objections.

Local Civil Rule 56 requires that a motion for summary judgment "be supported by a

separate, short, and concise statement of material facts, each set[ting] forth in separately numbered

paragraphs, as to which the moving party contends there is no genuine issue of material fact to be

tried." M.D. La. Civ. R. 56(b)(1). A party opposing the motion shall submit its own statement

which must "admit, deny or qualify the facts by reference to each numbered paragraph of the

moving party's statement of material facts and unless a fact is admitted, shall support each denial

or qualification by a record citation as required by this rule." *Id.* R. 56(c).

> Facts contained in a supporting or opposing statement of material
> facts, if supported by record citations as required by this rule, shall
> be deemed admitted unless properly controverted. An assertion of

fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment.

*Id.* R. 56(f). Thus, Defendant's failure to cite to the specific page or paragraph number in its evidence is a technical violation of this local rule and the general standards articulated above governing Federal Rule of Civil Procedure 56. *See Malacara*, 353 F.3d at 405; *Ragas* 136 F.3d at 458; *Kline*, 845 F.2d at 1307; *Dunkel*, 927 F.2d at 956.

However, even where a party fails to properly controvert a fact in an opposing statement of material fact, as required by Local Rule 56(c), the Court is not required to deem the fact admitted under Local Rule 56(f). *See Sanford v. Kirst*, No. 21-347, 2023 WL 4052957, at *2 (M.D. La. June 16, 2023) (deGravelles, J.). Rather, "case law recognizes that the Court can still consider record evidence to determine if there is a factual dispute." *Id.* (quoting *Braud v. Wal-Mart Stores, Inc.*, No. 17-320, 2019 WL 3364320, at *4 (M.D. La. July 25, 2019) (deGravelles, J.) (first citing *Smith v. Brenoettsy*, 158 F.3d 908, 910 (5th Cir. 1998) (citation omitted) (holding, where plaintiff failed to oppose the motion for summary judgment, that facts in "Statement of Undisputed Facts" were admitted, "except to the extent that the 'facts' in the 'Statement of Undisputed Facts' are contradicted by 'facts' in other materials attached to his motion for summary judgment"); then citing *Porter v. Dauthier*, No. 14-41, 2015 WL 5611647, at *8, *13 (M.D. La. Sept. 23, 2015) (deGravelles, J.))). Consequently, even though Carrington acted improperly, the Court will still, in its discretion, review the evidence to determine if there is a genuine issue of fact. Guillory's objection is thus overruled.[2]

---

[2] The Court pauses here to express its frustration with Carrington's counsel on a related issue. Carrington's entire opposition to *Pl. MSJ* was filed into the record as a single 200-page file (Doc. 45), and no exhibit stickers were included in this submission to aid the Court in locating the relevant documents. For instance, Guillory's Letter of

Carrington's objection will be overruled as well. "Rule 56(c)(4) provides that when affidavits are used to support or oppose a summary-judgment motion, they 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Barnett v. Louisiana Dep't of Health*, No. 17-1793, 2023 WL 2467876, at *1 (M.D. La. Mar. 10, 2023) (deGravelles, J.) (citing 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (4th ed.) (quoting Fed. R. Civ. P. 56(c)(4))).

But, Rule 56(c)(2) states: "A party may object that the material cited to support or dispute a fact cannot be presented *in a form that would be admissible in evidence.*" Fed. R. Civ. P. 56(c)(2) (emphasis added). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017)) (quoting 11 Moore's Federal Practice–Civil ¶ 56.91 (2017); and then citing *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (holding that a "proponent need only 'explain the admissible form that is anticipated" (quoting Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment)); and then citing *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015) (recognizing that a "court may consider . . . the content or substance of otherwise inadmissible materials where [ ] 'the party submitting the evidence show[s] that it will be possible

---

Financial Responsibility, included as Exhibit F to Russell's Declaration (which is Def. Ex. 1), is buried in the record as Doc. 45 at 95, but neither were marked. This is a gross violation of the Court's rules and guidelines on filing exhibits. *See* Administrative Procedures for Filing Electronic Documents for Civil and Criminal Cases, § III.A (M.D. La. 2022), available at https://www.lamd.uscourts.gov/administrative-procedures (last visited Feb. 14, 2024) ("Do not submit *in globo* exhibits. Each exhibit should be submitted individually in CM/ECF with an exhibit number and short description (e.g., Ex.1 Plaintiff Depo)."). Under the above authorities, the Court was under no obligation to sift through these documents in an effort to rule on the instant motions, but it did so anyway for the sake of judicial economy and fairness to the parties.

to put the information . . . into an admissible form." (alteration in original) (quoting 11 James Wm. Moore et al., Moore's Federal Practice–Civil ¶ 56.91[2] (3d ed. 2015))); and then citing *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (determining that a district court may consider a statement "if the statement could be reduced to admissible evidence at trial or reduced to admissible form." (citation omitted))).

Several district courts have applied this standard to reject challenges to authenticity and hearsay at the summary judgment stage. As one stated:

> Whether the statements as made by the declarant are hearsay is not relevant in the summary judgment context, because at this stage "materials cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.' " *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)). And Plaintiff asserts the substance of the relevant statements can be presented at trial in admissible form either through the declarant's testimony, the testimony of TEA members, or the testimony of Comptroller personnel. . . . Moreover, Defendant's objections here are more properly suited to the trial context where the disputed evidence in the precise form sought to be admitted can by analyzed in its full context. For evidence to be proper at the summary judgment stage it does not need to be admissible in the exact form presented, but merely capable of being "presented in a form that would be admissible." Fed R. Civ. P. 56(c)(2).

*Texas Ent. Ass'n, Inc. v. Hegar*, No. 17-594, 2019 WL 13036162, at *11 n.12 (W.D. Tex. Feb. 27, 2019), *aff'd*, 10 F.4th 495 (5th Cir. 2021); *see also Humphrey v. Tidewater GOM, Inc.*, 616 F. Supp. 3d 538, 548 (M.D. La. 2022) (deGravelles, J.) (considering hearsay evidence for summary judgment purposes); *In re TK Boat Rentals, LLC*, 411 F. Supp. 3d 351, 374 (E.D. La. 2019) (allowing emails between counsel and a declaration confirming the authenticity and content of the emails to be admitted as evidence in ruling on summary judgment motion, holding that "[b]ecause the content of the emails may be presented in a form admissible at trial, [the] declaration and the emails are competent summary judgment evidence."); *Ali v. Dist. Dir.*, 209 F. Supp. 3d 1268, 1276

(S.D. Fla. 2016) ("Nevertheless, a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form. . . . The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial.") (citations and internal quotations omitted).

In sum, for our purposes here, it is only necessary to consider whether the disputed evidence can be presented in a form admissible at trial. *In re TK Boat Rentals, LLC*, 411 F. Supp. 3d at 374; *see also Barnett*, 2023 WL 2467876, at *2 (same). And, as stated by the court in *Ali v. District Director*: "[t]he most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." 209 F. Supp. 3d at 1276 (citations omitted); *see also Barnett*, 2023 WL 2467876, at *2 (same).

Accordingly, Defendant's objections that the various emails and documents Plaintiff relies upon are not properly authenticated or that they impermissibly contain hearsay is misplaced. As a result, Defendant's objections to these documents are overruled.

### C. Rule 56(d)

Plaintiff argues in the alternative that the Court defer ruling on *Def. MSJ* under Federal Rule of Civil Procedure 56(d). (Doc. 42 at 2.) Plaintiff states that such a delay would allow the Court an opportunity to decide her motion to compel (Doc. 32) and for the plaintiff to then supplement her opposition with any additional evidence. (Doc. 42 at 2.) Plaintiff attaches a declaration in support of the Rule 56(d) motion, wherein Plaintiff's counsel outlines how he is seeking Carrington's policies and procedures as additional evidence of how Carrington interprets its contractual obligations. (Bergeron Decl., Doc. 42-3.)

Defendant opposes any delay. (Doc. 46 at 2.) Defendant maintains that Plaintiff has not satisfied the requirements of Rule 56(d) because the policies are not necessary for Plaintiff's defense. (*See id.*) As Defendant argues below, the policies and procedures do not create a contract between the parties. (*Id.* (citations omitted).)

Under Rule 56(d),

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). "Thus Rule 56(d) allows a party who has no specific material contradicting its adversary's presentation to survive a summary-judgment motion by presenting valid reasons justifying his failure of proof." 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740 (4th ed. 2023.)

> The purpose of subdivision (d) is to provide an additional safeguard against an improvident or premature grant of summary judgment and the rule generally has been applied to achieve that objective. Consistent with this purpose, courts have stated that the provision should be applied with a spirit of liberality. Thus, in certain circumstances courts have indicated that continuances would be proper even though Rule 56(d) had not been formally complied with when the court concluded that the party opposing summary judgment had been diligent and had acted in good faith.

*Id.*

But, "while Rule 56(d) motions for additional discovery are broadly favored and should be liberally granted, the party filing the motion must demonstrate how additional discovery will create a genuine issue of material fact." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422–23 (5th Cir. 2016) (cleaned up). Thus, "the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and

indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.' " *Id.* at 423 (quoting *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013)). "The nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts." *Id.* (quoting *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990)).

Additionally, "the rule will not be applied to aid a party who has been lazy or dilatory. Thus, . . . a request for relief under Rule 56(d) is extremely unlikely to succeed when the party seeking the delay has failed to take advantage of discovery." Wright & Miller, *supra*, at § 2741.

Here, the central basis for the Rule 56(d) motion was Plaintiff's desire to obtain documents that were the subject of the motion to compel. (*See* Bergeron Decl. ¶¶ 9–12, Doc. 42-3.) However, Plaintiff filed her opposition on April 4, 2023, (Doc. 42), and, on July 21, 2023, the magistrate judge partially granted Plaintiff's motion and compelled the production of certain policies and procedures in Carrington's possession. (Doc. 55 at 3, 8–9.) Despite obtaining these documents, Plaintiff has not supplemented her opposition in any way.

"In evaluating district courts' rulings on Rule 56(d) motions, [the Fifth Circuit] generally assesses whether the evidence requested would affect the outcome of a summary judgment motion." *Smith*, 827 F.3d at 422–23 (citing *Biles*, 714 F.3d at 895). The Fifth Circuit "has found an abuse of discretion where it can identify a specific piece of evidence that would likely create a material fact issue." *Id.* (citing *Hinojosa v. Johnson*, 277 F. App'x 370, 378 (5th Cir. 2008)).

Here, that is not the case. Given Plaintiff's delay in supplementing her opposition, this Court is left with the conclusion that there were either no additional documents which could have supported Plaintiff's opposition (in which case the Rule 56(d) request can be denied under *Smith*) or that Plaintiff has been dilatory in supplementing (in which case it should be denied for that

reason, *see* Wright & Miller, *supra*). Either way, Plaintiff is not entitled to relief under Rule 56(d), and the Court will proceed to rule on the merits of *Def. MSJ*.

III.   **DISCUSSION**

**A. Breach of Contract Claim**

*1. Parties' Arguments*

Carrington contends that it is entitled to judgment as a matter of law on Guillory's breach of contract claim. Specifically, Carrington argues there was no breach of contract because (a) it promptly inspected the Property and released the funds; (b) Carrington's holding and disbursement of the insurance proceeds did not cause Guillory damages; and (c) there was no implied contract because, here, there was an express contract on the same subject matter. (Doc. 39-1 at 11–17.)

Guillory responds that there are questions of fact precluding summary judgment. (Doc. 42 at 9.) Specifically, Guillory asserts that Carrington's motion should be denied because: (a) there are disputes of fact on whether Carrington breached its duty to "promptly" inspect the repairs to the Property; (b) there are disputes of fact concerning the existence of an implied contract based on representations made to Guillory in Carrington's Claims Procedures Packet; and (c) Carrington's caselaw is distinguishable because none deal with its duty to "promptly" inspect. (Doc. 42 at 9–19.)

Carrington replies that (a) all inspections were requested and conducted within a reasonable time; (b) the inspections were also consistent with Carrington's internal procedures, which "are business decisions which the Court should not interfere [with] or second-guess;" (c) those internal procedures do not make a contract with Guillory, as they do not satisfy the requirements of a credit agreement under La. R.S. § 6:1122; (d) Carrington's initial distribution was consistent with the

terms of the Mortgage; (e) any inspector error did not result in a breach; and (f) no implied contract existed as a matter of law. (Doc. 46 at 3–8.)

Plaintiff also moves for partial summary judgment on part of her breach of contract claim because (a) Carrington failed to initially disburse the greater of $40,000 or 33% of the insurance proceeds, despite having all required documentation, and (b) Carrington paid the initial disbursement in two checks rather than one single payment. (Doc. 40-1 at 1–4.) Plaintiff argues the Mortgage is ambiguous on this point and that her interpretation is supported by (a) the Claims Procedures Packet sent to Guillory; (b) Carrington's internal policies and procedures, as expressed by Carrington's corporate deponent; and (c) Fannie Mae guidelines to which Carrington adheres. (*Id.* at 6–14.)

Carrington opposes *Pl. MPSJ.* (Doc. 45.) Carrington argues: (a) certain of Plaintiff's evidence is inadmissible; (b) the Claims Procedures Packet (also known as the Loss Draft Procedures) are not a contract; (c) even if this packet was a part of the mortgage, there was no breach because (i) the Mortgage is not ambiguous; (ii) Carrington satisfied its obligations under the Mortgage; and (iii) there are questions of fact as to whether Plaintiff submitted all required documentation. (*Id.* at 2–12.)

Guillory responds that (a) Carrington relies on outdated law in its evidentiary objections; (b) Carrington's Loss Draft policies are evidence of its contractual intent under the Mortgage; (c) the Mortgage is ambiguous, so extrinsic evidence can be used; and (d) Carrington breached the Mortgage and attempted to impose on Guillory alleged documentation requirements that are not contained in the Mortgage. (Doc. 48 at 2–10.)

### 2. *Applicable Law*

#### a. Louisiana Law on Contracts Generally

"When reviewing a state law contract claim, a federal court in Louisiana is bound by the state's choice-of-law rules." *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Louisiana rules provide that where, as here, a contract includes a choice-of-law provision, the provision 'is presumed valid until it is proved invalid.' " *Id.* (citing *Daniels v. Int'l Paper Co.*, 245 So.3d 180, 184 (La. App. 2 Cir. 2017)). Here, the Mortgage provides that it is governed by the "law of the jurisdiction in which the Property is located," (Mortgage ¶ 16, Doc. 39-3 at 26), so "Louisiana law governs this breach-of-contract claim." *IberiaBank*, 907 F.3d at 835.

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. "In Louisiana, a breach-of-contract claim has three 'essential' elements: '(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee.' " *IberiaBank*, 907 F.3d at 835 (quoting *Favrot v. Favrot*, 68 So.3d 1099, 1108–09 (La. App. 4 Cir. 2011)). "The first two elements of a breach-of-contract claim, obligation and breach, 'involve[ ] issues of both contractual interpretation as a matter of law, as well as questions of fact regarding whether the actions of the parties actually constituted the alleged breach under the applicable contractual terms.' " *Id.* (citing *Mobil Expl. & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note 95-3317(A)*, 837 So.2d 11, 26 (La. App. 1 Cir. 2002)).

#### b. Interpretation of these Mortgage Provisions

Carrington points to several cases involving mortgage contracts with purportedly similar clauses to Section 5 of the instant Mortgage. As Defendant argues, these cases generally support

the enforceability of these provisions. *See Dabney v. Countrywide Home Loans, Inc.*, 428 F. App'x 474, 476 (5th Cir. 2011) (affirming granting of summary judgment because deed gave mortgagee the right to "disburse proceeds for the repairs and restoration . . . in a series of progress payments as the work is completed" and to "withhold the 'insurance proceeds until' the company had been afforded 'an opportunity to inspect . . . to ensure that the work has been completed . . .'" and because the inspection revealed that only fifteen percent of the required work was completed, so mortgagee "was fully justified in refusing to disburse additional proceeds."); *Harney v. Select Portfolio Servicing, Inc.*, No. 16-1998, 2018 WL 1182407, at *6–8 (E.D. La. Mar. 7, 2018) (Barbier, J.) (relying on *Dabney* and dismissing breach of contract claim based on mortgage with language nearly identical to this case because "the mortgage agreement clearly grants [the mortgagee] the authority to withhold insurance proceeds subject to its satisfaction of the performed repairs" and because the mortgagee "was not obligated to make any additional disbursements to Plaintiffs in the absence of Plaintiffs engaging in any self-funded repair."). But, neither of these cases involved the interpretation of the term "prompt," so they provide little guidance to the instant dispute.

Two cases cited by Carrington—*Suffern v. Countrywide Home Loans, Inc.*, No. 06-0358, 2006 WL 1999204 (E.D. La. July 14, 2006) and *Orrill v. Mortg. Elec. Registration Sys., Inc.*, No. 06-10012, 2010 WL 2696965 (E.D. La. July 1, 2010)—did address this term, but not in a dispositive way. As will be discussed below, both cases are not binding and distinguishable. Thus, the Court must rely on general principles of contract interpretation to explicate the Mortgage's meaning.

### c.   Interpretation of Ambiguous Contracts

"Interpreting a contract is a matter of determining the parties' common intent." *Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 298 (5th Cir. 2019) (citing La. Civ. Code art. 2045).

"When a contract is unambiguous, [courts] look only to the four corners of the contract to interpret it." *Id.* (citing La. Civ. Code art. 2046). "A contract is ambiguous, however, 'when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction.' " *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007) (quoting *Lloyds of London v. Transcon. Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996)).

"[W]hen the terms of a written agreement are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or to show the intention of the parties." *Brock Servs.*, 936 F.3d at 298 (citing *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 563 (5th Cir. 2005)). *See also Scafidi v. Johnson*, 420 So. 2d 1113, 1115 (La. 1982) ("Between the parties to an instrument, parol evidence is admissible . . . to explain an ambiguity when such explanation is not inconsistent with the written terms. . . ." (quotation omitted) (cited with approval by *Brock Servs.*)).

"A doubtful provision must be interpreted 'in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.' " *Greenwood 950, L.L.C. v. Chesapeake La., L.P.*, 683 F.3d 666, 669 (5th Cir. 2012) (quoting La. Civ. Code art. 2053). "According to the Civil Code, *equity* 'is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another,' and *usage* is 'a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation.' " *Id.* at 669 n.13 (quoting La. Civ. Code art. 2055).

Additionally, "[n]ontechnical words in a contract must be given their generally prevailing meaning, and each contract provision must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Id.* at 669 (citing La. Civ. Code arts. 2047, 2050).

"If an ambiguity remains after applying the other general rules of construction, then the ambiguous contractual provision is to be construed against the drafter." *Brock Servs.*, 936 F.3d at 298 (quoting *Chinook USA, L.L.C. v. Duck Commander, Inc.*, 721 F. App'x 361, 366 (5th Cir. 2018)) (citing La. Civ. Code art. 2056 ("In case of doubt *that cannot otherwise be resolved*, a provision in a contract must be interpreted against the party who furnished its text." (emphasis added by *Brock Servs.*))).

Ultimately, because "[i]ntent is an *issue of fact* which is to be inferred from all of the surrounding circumstances," *Guidry*, 512 F.3d at 181 (citations omitted), "when a contract is ambiguous, the trier of fact must resolve the factual issue of intent, and judgment on the pleadings or summary judgment is improper," *id.* (citing *Invs. Syndicate of Am., Inc. v. City of Indian Rocks Beach*, 434 F.2d 871, 877–78 (5th Cir. 1970) (finding that dismissal on the pleadings was error when the contract at issue was ambiguous); *Gertler v. City of New Orleans*, 2003-2131 (La. App. 4 Cir. 9/1/04), 881 So. 2d 792, 796 ("If the language of [a contract] is ambiguous or susceptible to multiple interpretations, the intent of the parties must be determined and summary judgment is inappropriate.")); *see also Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir. 1996) ("[A]mbiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties." (cited with approval by *Guidry*)); *Delaware Valley Fish Co. v. 3South LLC*, No. 21-141, 2023 WL 2416372, at *9–10 (M.D. La. Mar. 8, 2023) (deGravelles, J.) (denying summary judgment based on ambiguous contract). "Granting summary judgment on an ambiguous

contract may be appropriate only in the very rare circumstance where 'there is no issue of material fact concerning the pertinent intent' of the parties." *Guidry*, 512 F.3d at 181 n.5 (quoting *Sanders v. Ashland Oil, Inc.*, 96-1751 (La. App. 1 Cir. 6/20/97), 696 So. 2d 1031, 1035).

### 3. Analysis

#### a. Did Carrington breach the Mortgage by failing to inspect "promptly"?

Having carefully considered the matter, the Court will largely deny the *Def. MSJ* on this claim. Again, the relevant section of the Mortgage provides:

> During such repair and restoration period, [Carrington] shall have the right to hold such insurance proceeds until [Carrington] has had an opportunity to inspect such Property to ensure the work has been completed to [Carrington's] satisfaction, *provided that such inspection shall be undertaken promptly.* Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.

(*DSUMF* ¶ 6, Doc. 39-2 (emphasis added).)

The Court first finds that this provision is ambiguous. As Plaintiff contends, it does not define the term "promptly" or describe what "opportunity" or "satisfaction" mean. One reasonable interpretation is that taken by *Suffern*: that "prompt" can mean anywhere from three weeks to a month. *See Suffern*, 2006 WL 1999204, at *3. But, another reasonable interpretation was expressed by Carrington's corporate deponent; she was asked what the typical timeframe between a request for an inspection and the order of the inspection, and she replied, within "[a]bout seven business days we would expect that there [would] be movement." (Rule 30(b)(6) Dep. 82, Doc. 42-9 at 4.) Because both interpretations are reasonable, there is ambiguity, and summary judgment is inappropriate. *See Delaware Valley*, 2023 WL 2416372, at *9–10.

Given this ambiguity, parol evidence is admissible to clarify the parties' intent. *See Brock Servs.*, 936 F.3d at 298. Construing the evidence in a light most favorable to the Plaintiff, the parol

20

evidence—namely, the corporate deponent's testimony—shows that roughly seven days constitutes a "prompt" inspection.

Under that interpretation, a reasonable factfinder could easily conclude, when construing the evidence in a light most favorable to Guillory and drawing reasonable inferences in her favor, that Carrington breached the Mortgage by failing to inspect "promptly." That evidence shows the following delays between Guillory's request for an inspection and when the actual inspection took place:

| Plaintiff's Request for Inspection Made | Carrington's Inspection | Delay Between Request and Inspection |
|---|---|---|
| December 5, 2020 (Doc. 42-19 | December 15, 2020 (*DSUMF* ¶ 15, Doc. 39-2) | 10 days |
| March 26, 2021 (*DSUMF* ¶ 16) | April 8, 2021 (*DSUMF* ¶ 17) | 13 days |
| May 13, 2021 (*DSUMF* ¶ 20) | May 28, 2021 (rescheduled to June 13, 2021, at Plaintiff's request) (*DSUMF* ¶¶ 21–23) | 15 days from when inspection was first scheduled |
| October 19, 2021 (Doc. 42-21) or October 29, 2021 (*DSUMF* ¶ 24; Doc. 42 at 11) | November 11, 2021 (*DSUMF* ¶ 25) | 13 or 23 days |
| January 14, 2022 (Doc. 42 at 11; Doc. 42-20) | February 10, 2022 (*DSUMF* ¶ 29) | 27 days |
| June 28, 2022 (Doc. 42-16 at 1) (and reiterated on July 12, 2022 (*id.* at 2); August 9, 2022 (*id.* at 3) | Unclear from the record; final payment was made at some point in October 2022 (*DSUMF* ¶¶ 54–58; Doc. 42-18.) | At least 42 days and up to 93 |

Thus, a reasonable factfinder could side with Guillory on this claim.

Carrington advances a number of arguments in support of summary judgment, but each fails. First, Defendant points to different testimony in which its corporate deponent states that some delays were caused by "hurdles" created when Guillory's attorney refused to speak to an advocate and instead wanted to talk to one of Carrington's attorneys. (Rule 30(b)(6) Dep. 22, Doc. 46-1 at

3.) But this merely highlights the existence of questions of fact as to whether Carrington acted "promptly" under the circumstances.

Second, Carrington objects to Plaintiff's evidence about when she requested the inspections, arguing (a) that the various letters are unauthenticated and (b) that there are reasonable justifications for the delays, such as a letter being sent in the mail and one letter being received the Friday before a holiday weekend. (Doc. 46 at 3–4.) As to complaint (a), for the reasons stated above, these evidentiary objections are overruled. *See* Fed. R. Civ. P. 56(c)(2); *Lee*, 859 F.3d at 355 (quoting 11 Moore's Federal Practice–Civil ¶ 56.91 (2017)); *Barnett*, 2023 WL 2467876, at *1–2 (collecting authorities); Section II.B, *supra*. As to complaint (b), Carrington's hypothesis that any delay was caused by the mail is (i) speculative; (ii) ignores the other substantial delays highlighted above; and (iii) again underscores the existence of questions of fact.

Third, Carrington maintains that even if it breached the Mortgage, any breach was not the cause of Plaintiff's damages since (a) Guillory agreed in the Mortgage that Carrington had the right to "disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed," (*DSUMF* ¶ 6, Doc. 39-2); and (b) Guillory obligated herself in a Letter of Financial Responsibility to pay for the costs of the repairs, (Doc. 39-3 at 79). (Doc. 39-1 at 14–16.) But the Court rejects both of these arguments. As to the former, when construing the Mortgage in a light most favorable to Guillory and drawing reasonable inferences in her favor, Carrington's right to disburse must be read in conjunction with its obligation to inspect "promptly" "so that each is given the meaning suggested by the contract as a whole," *Greenwood*, 683 F.3d at 669, and Carrington's breach of this duty would still subject Carrington to damages for delay, La. Civ. Code art. 1989. Similarly, Guillory's decision to pay for the repairs herself does

not exonerate Carrington of any breach of its obligation to reimburse Guillory after prompt inspections.

Fourth, Defendant's authority is distinguishable. In *Suffern*, Judge Lemelle determined for purposes of a Rule 12(c) motion that, "given the number of inspections required following Hurricane Katrina, three weeks to conduct such inspection may actually be 'prompt.'" *Suffern*, 2006 WL 1999204, at *3. Moreover, "even if the delay was not 'prompt,' [the mortgagee] remedied the potential delay by providing Plaintiffs with $15,000 dollars . . . prior to conducting any inspection" and by providing the "full amount due three weeks after conducting" an inspection which occurred a month after Plaintiff's written request. *Id.*

However, *Suffern*'s scant analysis does not provide much guidance on how it arrived at its conclusion about the meaning of the term "prompt," and this Court is left with the conclusion that *Suffern* should be limited to the facts of that case—facts which, as shown above, are considerably different than the instant one, involving a much less severe event than Hurricane Katriana and substantially shorter delays.

Likewise, in *Orrill*, another case cited by Carrington, the court granted summary judgment to a mortgagor where the back-and-forth between the mortgagee and homeowner began on November 9, 2005, and was fully resolved by March 30, 2006. 2010 WL 2696965, at *3. The court concluded that the "evidence adduced in support of defendants' motion depicts nothing more than a good-faith dialogue regarding the amount of insurance payments that should have been disbursed at any time." *Id.* Plaintiff had received $63,000 less than a month after initially receiving the insurance checks, and that was "well over half of the $96,000 in repair costs and slightly less than half of the total amount of the insurance proceeds." *Id.* "Defendants then disbursed the remainder of the funds over the next few months in accordance with their estimates of the progress that had

been made on the repairs. The entire sum of the insurance proceeds had been disbursed within five months of [plaintiff's] receipt of the checks." *Id.* Relying on *Suffern*, the court noted that "Defendants made significant advance payments to [plaintiff] before they had conducted any inspections," and "[t]hey made additional payments that were commensurate with the level of progress that had been made on the repairs . . ." *Id.* at *4.

But *Orrill* is different than the instant case. Specifically, *Orrill* is distinguishable and not persuasive because: (a) like *Suffern*, *Orrill* took place in the generational aftermath of Hurricane Katrina, so a five-month delay in that case may be justified there but not here; (b) Guillory had to wait two months, not one month, before receiving the initial $40,000, and this payment did not represent "well over half" of the repair costs, (*see* Russell Decl. ¶¶ 16, 21, 28, Doc. 39-3); and (c) most importantly, Carrington's entire process took not five months but two years—from first reporting the loss on September 10, 2020, to receiving the final lump payment on April 26, 2022, and the final interest payment on October 18, 2022, (*id.* ¶¶ 8, 62–63)—so the delays here were significantly greater that in *Orrill* and *Suffern*.

For all these reasons, the Court finds summary judgment on this issue is inappropriate. Consequently, the Court denies *Def. MSJ* as to this claim.

>           *b.*  Did Carrington breach any obligation to initially disburse the funds?

The next issue is whether Carrington breached any obligation related to its initial disbursement to Plaintiff. Again, both sides move for summary judgment on this issue.

By way of factual background, Guillory received her first insurance payments for damage to her Property in October 2020, in the form of two checks in the amount of $41,292.55 and $4,491.24, for a total of $45,783.79. (Pl.'s *Statement of Undisputed Material Facts in Support of [Pl. MPSJ]* ("*PSUMF*") ¶ 3, Doc. 40-2; Def.'s *Response to [PSUMF]* ("*DRSUMF*") ¶ 1, Doc. 45

at 15.)[3] Carrington got the two checks on December 8, 2020, and returned them to Guillory for endorsement. (*PSUMF* ¶¶ 4–5, Doc. 40-2.) Carrington got the endorsed checks on January 7, 2021, and deposited them on January 11. (*Id.* ¶ 6.)

Guillory claims that Carrington's conduct thereafter constituted a breach of its contract. Specifically, Guillory received a Claims Procedures Packet, which said:

> **How are insurance funds released?** . . .
>
> Claims greater than $40,000:
>
> - Upon receipt of required documents (refer to Loss Draft Checklist), we will issue an initial disbursement payable to you and your contractor equal to the greater of $40,000, 33% of the insurance loss proceeds, or the amount by which the claim funds exceed the payoff amount of your loan.
>
> - Subsequent disbursements will be issued based upon the progress of repair work as determined by a property inspection.

(Doc. 40-5 at 3; *PSUMF* ¶ 7–8, Doc. 40-2.) Accordingly, in general, Carrington's policy is that when a claim exceeds $40,000, Carrington will make an initial disbursement of the greater of $40,0000.00, or 33% of the insurance loss proceeds, or the amount by which the claim funds exceeded the payoff amount of the loan. (*PSUMF* ¶ 9, Doc. 40-2.) Thus, says Plaintiff, because Carrington advised Guillory on January 7, 2021, that it received all required documents,[4] and

---

[3] When *PSUMF* is cited by itself, the fact has either been admitted in the *DRSUMF* or been qualified or denied in such a way as to have it be deemed admitted because it was not properly controverted. *See* M.D. La. Civ. R. 56(c), (f).

[4] Specifically, the Servicing Notes from that day provide:

01/07/2021   JENNIFER GUILLORY 337-764-9517 borrower called in wanting to know why she received

because Carrington did not make an initial payment until February 11, 2021 (and then only in the amount of $12,565.13), (*PSUMF* ¶¶ 10–11, Doc. 40-2), Carrington breached its contract. When construing this evidence in a light most favorable to Plaintiff and drawing reasonable inferences in her favor, the Court can easily deny *Def. MSJ* on this issue.

But, Carrington also presents evidence—namely, the language of the Mortgage, Carrington's policies, and the timeline of events—which makes partial summary judgment on *Pl. MPSJ* inappropriate. The Mortgage itself grants Carrington the right to "disburse proceeds for the repairs . . . in a single payment or in a series of progress payments as the work is completed," (*DSUMF* ¶ 6, Doc. 39-2.) Carrington submits evidence that it "holds insurance proceeds and makes periodic disbursements as work is completed in order to protect [Carrington's] interest in preserving its collateral, to prevent misuse of funds intended to repair the collateral, and to make sure repairs are completed in a workmanlike manner." (Russell Decl. ¶ 11, Doc. 39-3.) Construing that language and its intent in a light most favorable to Carrington and drawing reasonable inferences in its favor, Carrington was well within its rights to make the initial disbursements in multiple payments as the work progressed rather than a single lump sum.

---

| 11:46 AM | another claim packet; i advised that another claim packet was emailed to her on 1/6/2021 but was not needed because we already have all the required documents from her; borrower also advised that inspection had been complete and inspector had advised that she sent inspection results to us in December; i did check inspection website and advised to borrower that inspection results are at 30%; borrower advised that she did have to hire an attorney for the insurance claim and that she should be receiving more funds for the claim; borrower advised that she is not going to have contractor start work until some funds are released and would like for funds to be released as soon as possible; borrower also advised that she has spent all of her savings of $30,000 on the repairs for the home and would like to have funds sent out as soon as possible; i did schedule a follow up with file owner to reach out to borrower once inspection results are updated to the claim; NEXT STEP: pending inspection results; follow up with borrower |
|---|---|

(Doc. 40-6 at 3–4.)

Likewise, Carrington had certain policies dealing with the distribution of the proceeds, including the initial payment. Candace Russell, a Carrington Vice President and its corporate deponent, testified that, for monitored claims (i.e., claims exceeding $40,000, like this one), Carrington will issue an initial disbursement payable to the borrower and the borrower's contractor equal to the greater of $40,000, 33% of the insurance loss proceeds, or the amount by which the claim funds exceed the payoff of the loan. (Russell Decl. ¶¶ 10, 12, Doc. 39-3.) But, Carrington does so "upon receipt of the required documents." (*Id.* ¶ 12.) Additionally, Carrington has another option: when people choose to do the work before the funds have been released (like in this case), Carrington can also require a third of the work to be done before releasing the funds. (Rule 30(b)(6) Dep. 179–80, Doc. 39-5 at 18.) Thus, Carrington's policy also allowed it to pay upon request of paid receipts considered. (*Id.* at 96, Doc. 45 at 176.) So, in order to determine whether to release to the borrower only, Carrington typically needed, *inter alia*, signed paid receipts of payments, lien releases, and waivers. (Rule 30(b)(6) Dep. Resumed 89–90, Doc. 45 at 197; *see also* Rule 30(b)(6) Dep. at 110, Doc. 39-5 at 12 (stating that disbursements were based on "the results of loss draft inspections, including insurance estimate and borrower's intent to repair and other documentation."); Rule 30(b)(6) Dep. 97–98, 104, Doc. 45 at 178–79 (describing how certain documents were needed); (*id.* at 104–05, Doc. 45 at 179–80 (describing how Carrington needed to know that the contractor was licensed and how it needed a lien waiver so that Carrington would not be held responsible if the borrower did not pay the contractor); Loss Draft Checklist, Doc. 39-3 at 57 (stating how the mortgagor should provide Carrington with (a) endorsed insurance claim checks; (b) an insurance adjuster's estimate; (c) a mortgagor's declaration of intent to repair; (d) any contracts for repair, including a schedule of payments and itemization of repairs that matches the insurance adjuster's estimate; (e) a contractor's certification showing, *inter alia*, that he is

27

licensed and insured; (f) IRS Form W-9 for each contractor; and (g) conditional waivers and release of liens); Russell Decl. ¶¶ 14–15, Doc. 39-3 (describing above documents as required for claims exceeding $20,000).

Carrington presents evidence that the initial distributions were consistent with those policies and the Mortgage because Guillory in fact did not provide Carrington with the required documentation timely. Specifically, on December 7, 2020, Carrington received an estimate from Midas Painting estimating the cost to repair the Property at $126,081.00. (Russell Decl. ¶ 16, Doc. 39-3.) According to Russell, Guillory advised that the repairs on her roof were complete and requested an inspection on December 10, 2020. (*Id.* ¶ 17.) The Property was inspected on December 15, 2020, based on information and photographs provided by Guillory[5] and determined to be 30% complete, and, on December 30, 2020, another copy of the claims packet was emailed to Guillory. (*Id.* ¶¶19–20.) Again, Carrington received two fully endorsed checks on January 11, 2021—one in the amount of $41,292.55, and the other for $4,491.24. (*Id.* ¶ 21.) On January 21, Guillory called Carrington and asked for reimbursement for the Easy Roof Remodeling invoices she paid for the roof repairs. (*Id.* ¶ 22.) Carrington confirmed the invoices were paid in full but advised Guillory that it could not release additional funds because Carrington did not have an estimate from the insurer on file or confirmation that the other invoices she submitted were paid in full. (*Id.*) On January 29, 2021, Carrington received Guillory's insurance estimate from Guillory's attorney's office. (*Id.* ¶ 24.) On February 10, 2021, a disbursement in the amount of $12,565.13 was approved as reimbursement for the roof repairs, and the check was mailed to Guillory by letter dated February 18, 2021. (*Id.* ¶ 25.) A day before, on February 17, 2021, Carrington received an unsigned Letter of Financial Responsibility from Guillory, and Carrington

---

[5] At this time, due to Covid restrictions, Carrington accepted property inspections based on photographs submitted by the borrower in lieu of in person inspections. (Russell Decl. ¶ 18, Doc. 39-3.)

did not receive the signed copy until February 23, 2021. (*Id.* ¶ 27, Doc. 45 at 21; *see also* Rule 30(b)(6) Dep. 106–07, Doc. 45 at 181–82 (describing this as the last document shown in the payment history for the initial disbursements.) According to the letter, that document reflected that Guillory had "chosen contractors' estimates [which were] higher than what the estimate provided by the insurance company for repairs to [her] home," so she had to agree to "pay the contractor if the insurance company [did] not reimburse [her] for the remaining balance." (Doc. 45 at 95.) On March 10, 2021, a disbursement in the amount of $27,434.87 was approved, and the check was mailed on March 15, 2021. (Russell Decl. ¶ 28, Doc. 39-3.)

Considering these facts (construed in a light most favorable to Carrington with reasonable inferences drawn in its favor), the Court cannot conclude that all reasonable factfinders would decide, beyond debate, that Carrington breached the Mortgage in its initial disbursements. Questions of fact exist as to whether Guillory submitted the necessary documents and whether Carrington acted appropriately. Plaintiff contends that she never agreed to these documentation requirements (particularly the need for a Letter of Responsibility) and is thus not subject to them, but that is grist for the mill of trial; and though it appears at this point that Plaintiff has the much stronger argument on all the breach of contract claims addressed above, and though the Court has more latitude at the summary judgment stage before bench trials, the Court remains "aware that assessments of credibility come into sharper focus once live witnesses are heard[.]" *Placid Oil*, 932 F.2d at 398. Consequently, *Pl. MPSJ* will be denied.

### c.   Did Carrington breach any implied contract between the parties?

Guillory next argues that, while Carrington's failure to follow its Claims Procedure Packet, policies, and procedures constitutes evidence of a breach of a written contract between the parties, it also constitutes breach of an implied contract. (Doc. 42 at 16.) Carrington contends there is no

implied contract between it and Guillory with respect to the insurance proceeds because implied contracts cannot exist where there is an express contract between the parties on the same subject matter. (Doc. 39-1 at 16–17.) Guillory responds that these issues do not involve the same "subject matter" and that, in any event, the existence of a contract is a question of fact inappropriate for summary judgment. (Doc. 42 at 16.) Carrington replies that the Claims Procedure Packet is a "guide" or "checklist," not a contract of any kind, and certainly not an implied contract since it concerns the same subject matter as the Mortgage. (Doc. 46 at 5–8.)

Having carefully considered the matter, the Court agrees with Carrington that the Claims Procedure Packet does not create an implied contract. "An implied in fact contract rests upon consent implied from facts and circumstances showing a mutual intention to contract. Consent to an obligation may be implied from action only when circumstances unequivocally indicate an agreement or when the law presumes it." *Okuarume v. S. Univ. of New Orleans*, 2017-0897 (La. App. 4 Cir. 4/25/18), 245 So. 3d 1260, 1265 (quoting *Union Tex. Petrol. Corp. v. Mid La. Gas Co.*, (La. App. 4 Cir. 2/12/1987), 503 So. 2d 159, 165 (internal citations omitted)). "Furthermore . . . there can be no implied contract where there is an express contract between the same parties in reference to the same subject matter." *Id.* (citing *Mazureau & Hennen v. Morgan*, 25 La. Ann. 281 (La. 1873)).

Here, all reasonable factfinders would conclude that the Claims Procedures Packet and Mortgage involve "the same subject matter." Again, the Mortgage specifically provides:

> During such repair and restoration period, [Carrington] shall have the right to hold such insurance proceeds until [Carrington] has had an opportunity to inspect such Property to ensure the work has been completed to [Carrington's] satisfaction, *provided that such inspection shall be undertaken promptly*. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.

(*DSUMF* ¶ 6, Doc. 39-2 (emphasis added).) The relevant portion of the Claims Procedures Packet is specifically entitled, "How are insurance funds released?" (Doc. 39-3 at 55; Doc. 40-5 at 3.) The only reasonable interpretation of these two documents is that they involve the same subject matter—namely, disbursement of insurance proceeds.

Indeed, this conclusion is bolstered by Plaintiff's own deposition testimony. Guillory was shown her Note, the Mortgage, and the Loan Modification Agreement[6] and was then asked if she had any other written or oral agreements related to her mortgage loan, and she responded that she could not recall any. (Guillory Dep. 13–17, Doc. 39-4.)

Additionally, courts have recognized that a mortgagee's internal policies do not impose legal duties on it or otherwise establish a contract with the mortgagor. *See Shamrock Associated Indus., L.L.C. v. Fid. Nat. Prop. & Cas. Ins. Co.*, No. 06-4093, 2006 WL 6927866, at *3 (E.D. La. Nov. 2, 2006) (finding no breach of contract claim against mortgagee despite plaintiff's reliance on internal policies, and stating in reference to the negligence claim, "The internal corporate policy does not inure to the benefit of the mortgagor, but is designed to protect the investment of the mortgagee."); *Hinton v. Fed. Nat. Mortg. Ass'n*, 945 F. Supp. 1052, 1054 (S.D. Tex. 1996), *aff'd*, 137 F.3d 1350 (5th Cir. 1998) (unreported) ("A homeowner sued the current holder of his mortgage because it and its contract service agent required him to pay for private mortgage insurance when its internal guidelines said that it might have been waived. The homeowner's obligations are in the mortgage instruments he signed, not the mortgage lender's service guide.").

For all these reasons, the Court finds that the Claims Procedure Packet does not create an implied contract. So, *Def. MSJ* will be granted on this issue.

---

[6]The January 24, 2020, Loan Modification Agreement affirmed the terms of the Note and Mortgage, as modified, and did not modify Section 5 of the Mortgage. (*DSUMF* ¶¶ 7–8, Doc. 39-2.).

Nevertheless, Guillory is correct about the role the Claims Procedures Packet, policies, and procedures play in this case. This Court already determined that Section 5 of the Mortgage is ambiguous, and all of the documents and testimony related to Carrington's policies and procedures—including the Claims Procedures Packet—play a critical role in interpreting that ambiguity. Thus, in that respect, *Def. MSJ* is again denied.

### B.  Breach of Fiduciary Duty Claim

Carrington next argues there was no breach of fiduciary duty claim because Carrington had no fiduciary relationship with Guillory; rather, their relationship was that of a financial institution and customer. (Doc. 39-1 at 17–20.) Guillory responds that there are questions of fact on this issue (a) because Carrington was entrusted with her insurance funds and so Carrington had to act in her interest, and (b) because of the same facts highlighted above in the breach of contract section. (Doc. 42 at 19–21.) Carrington replies (a) that Guillory's efforts to distinguish its authority fail; (b) that no entrustment happened, as Guillory was contractually obligated to tender the insurance proceeds to Carrington; and (c) Carrington did not act in Guillory's interest but in its own in order to protect the insurance proceeds until repairs could be completed. (Doc. 46 at 8–10.)

In short, the Court will grant *Def. MSJ* on this issue. "In Louisiana, it is clear that a financial institution only owes to a borrower the duty of complying with the contract between the institution and the borrower. However, no fiduciary duty of loyalty exists between the financial institution and the borrower." *Landreneau v. Fleet Fin. Grp.*, 197 F. Supp. 2d 551, 557 (M.D. La. 2002). "[U]nless expressly set forth in a written agency or trust agreement, no fiduciary responsibilities of a financial institution arise toward customers or third parties." *Id.* (quoting *Ultra Fabricators, Inc. v. M C Bank & Tr. Co.*, 724 So. 2d 210, 214 (La. App. 1 Cir. 1998)).

This is because Louisiana Revised Statute § 6:1124 provides in relevant part:

> No financial institution or officer or employee thereof shall be
> deemed or implied to be acting as a fiduciary, or have a fiduciary
> obligation or responsibility to its customers or to third parties other
> than shareholders of the institution, unless there is a written agency
> or trust agreement under which the financial institution specifically
> agrees to act and perform in the capacity of a fiduciary. The
> fiduciary responsibility and liability of a financial institution or any
> officer or employee thereof shall be limited solely to performance
> under such a contract and shall not extend beyond the scope thereof.
> . . . This Section is not limited to credit agreements and shall apply
> to all types of relationships to which a financial institution may be a
> party.

La. R.S. § 6:1124. Thus, this statute "maintains that there can be no implied fiduciary obligations

for a financial institution." *AGEM Mgmt. Servs., LLC v. First Tennessee Bank Nat. Ass'n*, 942 F.

Supp. 2d 611, 621 (E.D. La. 2013).

Numerous cases have applied La. R.S. § 6:1124 to dismiss a breach of fiduciary duty claim

and/or find that no fiduciary relationship existed. *See Landreneau*, 197 F. Supp. 2d at 558 (granting

summary judgment because plaintiffs presented no evidence "to establish that there was a contract

. . . wherein [defendant] expressly obligated itself as a fiduciary on behalf of the

cardholders/customers"); *Crumes v. Gen. Ins. Co. of Am.*, No. 06-6890, 2007 WL 4257067, at *3

(E.D. La. Nov. 30, 2007) (Barbier, J.) (granting summary judgment and finding that mortgage

bank owed no fiduciary duty when it purchased insurance to protect its interest in collateral

because plaintiffs failed to show there was a written agreement establishing a fiduciary duty

between the parties); *Grubaugh v. Cent. Progressive Bank*, No. 13-3045, 2014 WL 794141, at *5

(E.D. La. Feb. 27, 2014) (Barbier, J.) (granting summary judgment on breach of fiduciary duty

claim because plaintiff failed to present evidence that he entered into a "written agency or trust

agreement under which" defendant bank "agreed to act as a fiduciary," so plaintiff "failed to prove

that a fiduciary relationship existed."); *Grodner & Assocs., APLLC v. Regions Bank*, 338 F. Supp.

3d 488, 502 (M.D. La. 2018) (Dick, C.J.) (finding law firm had "no claim against the Bank for

33

breach of fiduciary duty because it has failed to offer summary judgment evidence to support the conclusion that a fiduciary relationship existed" when there was "no evidence that the Bank assumed any fiduciary duties . . . outside of the Deposit Agreements" and when there was no evidence of "any written policy" requiring bank to take various actions).

The Court finds that similar reasoning applies in this case. The clear and unambiguous language of La. R.S. § 6:1124 precludes a finding of an implied fiduciary duty; any such obligation must be express. Here, Guillory can point to no provision of any contract between the parties expressly imposing a fiduciary relationship. Consequently, the breach of fiduciary duty claim fails as a matter of law.

Plaintiff points to a few state appellate decisions recognizing certain duties that La. R.S. § 6:1124 does not foreclose. *See Simmons, Morris & Carroll, LLC v. Cap. One, N.A.*, 49,005 (La. App. 2 Cir. 6/27/14), 144 So. 3d 1207, 1216 (recognizing that a bank owes a duty of reasonable care for a negligent misrepresentation claim when advising a customer on a matter within its particular area of expertise, though finding that situation not present under the facts of the case (citing *In re Succession of McKnight*, 33,802 (La. App. 2d Cir.10/4/00), 768 So. 2d 794, 797–98)); *Guimmo v. Albarado*, 99-286 (La. App. 5 Cir. 7/27/99), 739 So. 2d 973, 975–76 (stating that, "under certain circumstances, such as where a fiduciary relationship is manifest, [an independent duty of care] to the borrower may arise," but (a) making no mention of § 6:1124, (b) providing no definition of what "manifest" means, and (c) finding that "there are simply no special circumstances here which would give rise to an additional duty on the part of the lender to protect the borrowers from this unfortunate purchase"); *Duplessis Buick-GMC Truck, Inc. v. Chauncey*, 2020-0914 (La. App. 1 Cir. 2/24/21), 322 So. 3d 262, 268 (stating that "under certain circumstances, employees owe a fiduciary duty to their employer," and finding that relationship

here because sales manager had been "transacting business, not for his own benefit, but for the benefit of [his employer], where there was 'a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other.'"). The Court finds each of these cases distinguishable for the reasons given above.

Moreover, even if these appellate decisions had some bearing (which they don't), they would not trump the clear and unambiguous statutory text of La. R.S. § 6:1124. This is because "Louisiana's 'civilian methodology' means the pecking order of . . . sources [of law] is different than it is for a common law state." *Jorge-Chavelas v. Louisiana Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 851 (5th Cir. 2019) (citing *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014)). "Louisiana's 'Constitution, codes, and statutes' are of paramount importance to its judges." *Id.* (quoting *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003)). Thus, La. R.S. § 6:1124 controls.

In sum, "in Louisiana, the only duty a financial institution owes a borrower is the duty to comply with the contract between the institution and the borrower." *Obioha v. Proctor Fin. Ins. Co.*, No. 06-5364, 2007 WL 2903227, at *3 (E.D. La. Oct. 2, 2007) (citing La. R.S. § 6:1124). As shown above, Carrington may be liable for breaching its obligations under the Mortgage. But no reasonable factfinder could conclude that the Mortgage and other agreements expressly imposed a fiduciary duty on Carrington. As a result, *Def. MSJ* will be granted on this claim, and it will be dismissed.

### C. Conversion

Next, Carrington asserts that it did not convert Guillory's insurance proceeds because (a) Carrington had a right to hold the funds and disburse them as work progressed under the Mortgage and (b) in any event, Carrington distributed interest on the money quarterly. (Doc. 39-1 at 20–21.)

35

Guillory responds that there are questions of fact on this claim because (a) even if Carrington had an initial right to retain the insurance proceeds, it is liable for its failure to timely and properly disburse them, and (b) even if Carrington paid interest, it is liable for the emotional damages it caused (Doc. 42 at 21–22.) In reply, Carrington reiterates that, under the Mortgage, Carrington had the right to disburse payments either in a single payment or a series as the work was completed. (Doc. 46 at 10.)

 "Conversion is defined as an act in derogation of the plaintiff's possessory rights or any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently, or for an indefinite time." *Jones v. Administrators of Tulane Educ. Fund*, 51 F.4th 101, 119 (5th Cir. 2022) (quoting *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 51 F.3d 553, 557 (5th Cir. 1995)). Critically, "under Louisiana law, '[a]lthough a party may have rightfully come into possession of another's goods, the subsequent refusal to surrender the goods to one who is entitled to them may constitute conversion.' " *Id.* (quoting *Kinchen v. Louie Dabdoub Sell Cars, Inc.*, 05-218 (La. App. 5 Cir. 10/6/05), 912 So. 2d 715, 718).

Having carefully considered the matter, the Court finds summary judgment on this claim to be inappropriate. On the one hand, as Carrington argues, it had the right under the Mortgage to "disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed." (*DSUMF* ¶ 6, Doc. 39-2.) But, on the other hand, for all the reasons given above in the breach of contract section, when construing the evidence in a light most favorable to Plaintiff and drawing reasonable inferences in her favor, a reasonable factfinder could also conclude (a) that Carrington refused to surrender the initial disbursements to Guillory, despite its obligations to do so, (b) that Carrington unreasonably and improperly delayed inspecting the property, and (c) all of this conduct constituted a "refusal to surrender [money] to one who is

entitled to [it]." *Jones*, 51 F.4th at 119. As a result, genuine issues of material fact preclude summary judgment on the conversion claim, and *Def. MSJ* on this issue will be denied.

Carrington's argument about damages is also misplaced. "In Louisiana, '[t]he traditional damages for conversion consist of the return of the property itself, or if the property cannot be returned, the value of the property at the time of the conversion.' " *Louisiana Specialty Hosp., LLC v. Adams*, No. 10-1513, 2010 WL 3211077, at *2 (E.D. La. Aug. 13, 2010) (Feldman, J.) (citing *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 761 (La. 1985)). "A defendant may also be liable for mental anguish and inconvenience arising from the lost use of the property converted." *Id.* (citing *Broussard, Bolton, Halcomb & Vizzier v. Williams*, 796 So. 2d 791, 796 (La. Ct. App. 3 Cir. 2001)); *see also* 1 Frank L. Maraist & Thomas C. Galligan, Jr., *Louisiana Tort Law* § 2.09 (2d. ed. 2023) ("In addition to recovering the value of the chattel, the plaintiff is entitled to recover for inconvenience, embarrassment, and mental anguish. . . . A court also may fashion different, more appropriate remedies." (collecting cases)). "Indeed, '[t]he purpose of tort damages is to make the victim whole.' " *Adams*, 2010 WL 3211077, at *2 (first citing *Bellard v. Am. Cent. Ins. Co.*, 2007-1335 (La. 4/18/08), 980 So. 2d 654, 668; and then citing *Quealy*, 475 So. 2d at 762).

Here, as Guillory argues, if she successfully proves her conversion claim at trial, she will be entitled to other damages beyond the insurance proceeds themselves. For this additional reason, *Def. MSJ* on this claim is denied.

### D. Unjust Enrichment

Lastly, Carrington argues there is no unjust enrichment claim because (a) Carrington did not retain the insurance proceeds for itself and, again, paid interest; (b) any enrichment was not without cause but was rather specifically provided for in the contract; and (c) Guillory alleged other theories and thus has another remedy available at law. (Doc. 39-1. at 21–22.)

Guillory responds that (a) factual questions exist as to whether Carrington was unjustly enriched by enjoying the benefits of the insurance proceeds; (b) Carrington's enrichment was without cause or justification; and (c) Carrington takes inconsistent positions, arguing simultaneously that she has no adequate remedy at law while also trying to dismiss her other claims. (Doc. 42 at 23-25.)

Louisiana Civil Code article 2298 sets out the cause of action for unjust enrichment:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

La. Civ. Code art. 2298.

> To establish a claim for unjust enrichment under Louisiana law, a claimant must prove: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the resulting impoverishment, (4) an absence of 'justification' or 'cause' for the enrichment and impoverishment, and (5) no other remedy at law." *Brown v. Coleman Investments, Inc.*, 993 F. Supp. 432, 439 (M.D. La. 1998) (citing *Baker v. Maclay Properties Co.*, 648 So. 2d 888, 897 (La. 1995) (citations omitted)). Courts may " 'resort to equity only in cases of unjust enrichment for which there is no justification in law or contract.' " *Id.*, citing *SMP Sales Mgt., Inc. v. Fleet Credit Corp.*, 960 F.2d 557, 560 (5th Cir. 1992) (citations omitted). Stated simply, " '[q]uasi-contractual remedies may not supplant a contract between the parties.' " *Id.* (quoting *Marple v. Kurzweg*, 902 F.2d 397, 401 (5th Cir. 1990) (citations omitted) (emphasis added)).

*JMF Med., LLC v. Team Health, LLC*, 490 F. Supp. 3d 947, 979-80 (M.D. La. 2020) (deGravelles, J.).

Here, Guillory asserts a breach of contract claim, and this precludes any claim for unjust enrichment. *Id.* at 980 ("[B]oth the state and federal courts hold that the existence of a contract between the parties alone defeats a claim for unjust enrichment."); *Williams v. Chesapeake*

*Operating, Inc.*, No. 10-1906, 2011 WL 13160764, at *2 (W.D. La. Sept. 14, 2011) ("It is well-established that the absence of an available remedy at law is a threshold requirement, as the unjust enrichment remedy is available only to fill a gap in the law where no express remedy is provided." (cleaned up)); *Liberty Mut. Fire Ins. Co. v. Shaw Grp., Inc.*, No. 20-871, 2022 WL 896804, at *23 (M.D. La. Mar. 25, 2022) (deGravelles, J.) ("The existence of these two claims [for breach of contract and bad faith] necessarily precludes Shaw's ability to recover for unjust enrichment.").

While an unjust enrichment claim can be pled alongside a breach of contract claim if there is some question as to the validity or existence of the contract, *see Liberty Mut.*, 2022 WL 896804, at *24 (citing *United States ex rel. Sun Coast Contracting Servs., LLC v. DQSI, LLC*, No. 13-568, 2014 WL 7246936, at *5 (M.D. La. Dec. 17, 2014) (Jackson, J.)), here that is not the case. "It is the availability of the remedy at law, not its success, that precludes the unjust enrichment claim." *Id.* As Judge Jackson stated in *Sun Coast*:

> A plaintiff need not ultimately prevail on another claim for a court to find that it was available. "The existence of a 'remedy' which precludes application of unjust enrichment does not connote the ability to recoup your impoverishment . . . It merely connotes the ability to bring the action or seek the remedy." *Carriere v. Bank of La.*, 702 So. 2d 648, 672 (La. 1996). For example, courts have found remedies at law available even when claims based in law were time-barred or never advanced. *See, e.g., Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 241, 242 (La. 2010); *JP Mack Indus. LLC v. Mosaic Fertilizer, LLC*, 970 F. Supp. 2d 516, 520–23 (E.D. La. 2013).

2014 WL 7246936, at *4.

In sum, *Def. MSJ* will be granted on this issue; because Guillory has another remedy available at law, her unjust enrichment claim must be dismissed. *See JMF Med.*, 490 F. Supp. 3d at 980; *Liberty Mut.*, 2022 WL 896804, at *24; *Andretti Sports Mktg. Louisiana, LLC v. NOLA Motorsports Host Comm., Inc.*, No. 15-2167, 2015 WL 13540096, at *7–8 (E.D. La. Dec. 2, 2015)

("The existence of another remedy at law will preclude an unjust enrichment claim."); *Reel Pipe, LLC v. USA Comserv, Inc.*, No. 18-6646, 2019 WL 127055, at *4 (E.D. La. Jan. 8, 2019) ("USA Comserv cannot state a claim for unjust enrichment because other remedies are available at law." (citation omitted)); *Cf. Schott, Tr. for Est. of InforMD, LLC v. Massengale*, No. 18-759, 2019 WL 4741811, at *17 (M.D. La. Sept. 27, 2019) (declining to dismiss unjust enrichment claim because, *inter alia*, "the validity of the other claims in the *Complaint* [was] still in question.").

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to for [sic] Summary Judgment* (Doc. 39) filed by Defendant, Carrington Mortgage Services, LLC, is **GRANTED IN PART** and **DENIED IN PART**. With respect to Plaintiff's claims for (1) breach of an implied contract, (2) breach of fiduciary duty, and (3) unjust enrichment, *Def. MSJ* is **GRANTED**, and these claims are **DISMISSED WITH PREJUDICE.** With respect to Plaintiff's claims for (1) breach of an express contract and (2) conversion, the *Def. MSJ* is **DENIED**, and these claims will proceed to trial.

**IT IS FURTHER ORDERED** that *Plaintiff's Motion for Partial Summary Judgment* (Doc. 40) filed by Jennifer Guillory is **DENIED**.

Signed in Baton Rouge, Louisiana, on March 8, 2024.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**